## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL HUTSON,<br><br>               Plaintiff,<br><br>v.<br><br><br>PARSLEY ENERGY, INC., BRYAN SHEFFIELD, MATT GALLAGHER, A.R. ALAMEDDINE, RONALD BROKMEYER, WILLIAM L. BROWNING, HEMANG DESAI, KAREN HUGHES, JAMES J. KLECKNER, DAVID SMITH, S. WIL VANLOH, JR., and JERRY WINDLINGER,<br><br>               Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Daniel Hutson ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Parsley Energy, Inc. ("Parsley" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings

on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Parsley and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against Parsley and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Pioneer Natural Resources Company ("Parent") (the "Proposed Transaction").

2.      On October 20, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Parent, Pearl First Merger Sub Inc. ("Merger Sub Inc."), Pearl Second Merger Sub LLC ("Merger Sub LLC"), Pearl Opco Merger Sub LLC ("Opco Merger Sub LLC," and together with Parent, Merger Sub Inc., and Merger Sub LLC, "Pioneer"), and Parsley Energy, LLC ("Opco LLC").  Pursuant to the terms of the Merger Agreement, each share of Class A common stock of Parsley will be converted into 0.1252 shares of Parent common stock, and each unit of Opco LLC will be converted into 0.1252 shares of Parent common stock (the "Merger Consideration").

3.      On December 4, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Parsley and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed

Transaction unless and until the material information discussed below is disclosed to Parsley shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, the owner of Parsley shares.

9.      Defendant Parsley is incorporated under the laws of Delaware and has its principal executive offices located at 303 Colorado Street, Austin, Texas 78701.  The Company's common stock trades on the New York Stock Exchange under the symbol "PE."

10.      Defendant Bryan Sheffield ("Sheffield") is and has been the Chairman of the Company's Board at all times during the relevant time period.

11.     Defendant Matt Gallagher ("Gallagher") is and has been the President, Chief Executive Officer, and a director of Parsley at all times during the relevant time period.

12.     Defendant A.R. Alameddine ("Alameddine") is and has been a director of Parsley at all times during the relevant time period.

13.     Defendant Ronald Brokmeyer ("Brokmeyer") is and has been a director of Parsley at all times during the relevant time period.

14.     Defendant William L. Browning ("Browning") is and has been a director of Parsley at all times during the relevant time period.

15.     Defendant Hemang Desai ("Desai") is and has been a director of Parsley at all times during the relevant time period.

16.     Defendant Karen Hughes ("Hughes") is and has been a director of Parsley at all times during the relevant time period.

17.     Defendant James J. Kleckner ("Kleckner") is and has been a director of Parsley at all times during the relevant time period.

18.     Defendant David Smith ("Smith") is and has been a director of Parsley at all times during the relevant time period.

19.     Defendant S. Wil VanLoh, Jr. ("VanLoh") is and has been a director of Parsley at all times during the relevant time period.

20.     Defendant Jerry Windlinger ("Windlinger") is and has been a director of Parsley at all times during the relevant time period.

21.     Defendants Sheffield, Gallagher, Alameddine, Brokmeyer, Browning, Desai, Hughes, Kleckner, Smith, VanLoh, and Windlinger are collectively referred to herein as the "Individual Defendants."

22.    The Individual Defendants, along with Defendant Parsley, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

23.    Parsley is an independent oil and natural gas company focused on the acquisition, development, exploration and production of unconventional oil and natural gas properties in the Permian Basin. The Permian Basin is located in west Texas and southeastern New Mexico and is characterized by high oil and liquids-rich natural gas content, multiple vertical and horizontal target horizons, extensive production histories, long-lived reserves and historically high drilling success rates. Parsley's properties are located in two sub areas of the Permian Basin, the Midland and Delaware Basins, where, given the associated returns, it focuses predominantly on horizontal development drilling.

### The Company Announces the Proposed Transaction

24.    On October 20, 2020, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

DALLAS & AUSTIN, Texas--(BUSINESS WIRE)--**Pioneer Natural Resources Company (NYSE:PXD)** ("Pioneer" or "the Company") and Parsley Energy, Inc. (NYSE:PE) ("Parsley") today announced that they have entered into a definitive agreement under which Pioneer will acquire all of the outstanding shares of Parsley in an all-stock transaction valued at approximately $4.5 billion as of October 19, 2020. Under the terms of the agreement, Parsley shareholders will receive a fixed exchange ratio of 0.1252 shares of Pioneer common stock for each share of Parsley common stock owned. The total value for the transaction, inclusive of Parsley debt assumed by Pioneer, is approximately $7.6 billion.

Scott D. Sheffield, Pioneer's President and CEO stated, "This transaction creates an unmatched independent energy company by combining two complementary and premier Permian assets, further strengthening Pioneer's leadership position within the upstream energy sector. Parsley's high-quality portfolio in both the Midland and Delaware Basins, when added to Pioneer's peer-leading asset base,

will transform the investing landscape by creating a company of unique scale and quality that results in tangible and durable value for investors.

This combination is expected to drive annual synergies of $325 million and to be accretive to cash flow per share, free cash flow per share, earnings per share and corporate returns beginning in the first year, creating an even more compelling investment proposition. Further, Pioneer's emphasis on environmental stewardship aligns with Parsley's culture of sustainable operations. The addition of Parsley's high-quality assets enhances Pioneer's investment framework by improving our free cash flow profile and strengthening our ability to return capital to shareholders. We look forward to integrating Parsley into Pioneer and continuing our history of strong execution."

Matt Gallagher, Parsley's President and CEO stated, "The combination of Parsley and Pioneer creates an organization set to thrive as we forge a strong new link at the low end of the global cost curve. With neighboring acreage positions located entirely in the low-cost, high-margin Permian Basin, the industrial logic of this transaction is sound. Furthermore, the Pioneer team shares our belief that a clear returns-focused mindset is the best tool to compete for capital within the broader market. Sustainable free cash flow and growing return of capital are now investment prerequisites for the energy sector and this combination strengthens those paths for our shareholders. Finally, I would like to personally thank every employee of Parsley Energy for their role in the evolution of this company – from operating a few dozen vertical wells in 2008 to a global leadership position in E&P operations today."

S. Wil VanLoh, Jr., a Parsley director and the Founder and Chief Executive Officer of Quantum Energy Partners, Parsley's largest shareholder, commented, "The inevitable consolidation in the Permian marches on and I couldn't think of a better combination of assets than Pioneer and Parsley. This combination will provide Parsley shareholders new structural advantages including a lower cost of capital, a fortified balance sheet, economies of scale, and enhanced ESG capabilities, while amplifying all of the relative strengths of our standalone model. We look forward to partnering with the Pioneer team as they cement their position as the premier independent E&P."

**Strategic and Financial Benefits**

- **Accretive to Key Financial Metrics**– Pioneer expects the transaction to be accretive on key financial metrics including cash flow and free cash flow per share, earnings per share and return on capital employed beginning in 2021. The enhanced cash flow generation of the combined company strengthens Pioneer's investment framework creating a more robust free cash flow profile while lowering the reinvestment rate to a range of 65% to 75% at strip pricing.

- **Significant Synergies** – The combination of Pioneer and Parsley is expected to result in annual cost savings of approximately $325 million through operational efficiencies and reductions in general and administrative (G&A) and interest expenses. The expected present value of these cost savings exceeds $2 billion over a ten-year period. Operational savings are driven by the utilization of shared facilities, overlapping operations, scale efficiencies and benefits provided by Pioneer's extensive water infrastructure. Further synergies are realized from adjacent acreage footprints and the ability to drill extended laterals where lease configurations of the separate companies prevented long-lateral horizontal wells.

- **Unmatched Permian Scale** – The combined company will be the leading Permian independent exploration and production company with a premium asset base of approximately 930,000 net acres with no federal acreage and a production base of 328 thousand barrels of oil per day and 558 thousand barrels oil equivalent per day as of the second quarter of 2020. Additionally, based on year-end 2019 proved reserves, this transaction will increase Pioneer's proved reserves by approximately 65%.

- **Top-Tier Balance Sheet** – Pioneer's pro forma leverage will remain among the lowest in the industry, preserving the Company's financial flexibility and allowing for significant return of capital to shareholders. The combined company is expected to benefit from approximately $75 million per year in lower interest expense and will gradually reduce net debt to EBITDAX to less than 0.75x from an already strong position.

- **Sustainable Development** – Pioneer and Parsley have demonstrated strong commitments to best-in-class environmental, social and governance practices. The combined company will continue to aggressively pursue improvements and promote a culture that prioritizes sustainable operations. Pioneer plans to publish a comprehensive 2020 Sustainability Report detailing its efforts in these areas during the fourth quarter of 2020.

**Transaction Details**

This all-stock transaction constitutes a 7.9% premium to Parsley shareholders based on unaffected closing share prices as of October 19, 2020. Pioneer will issue approximately 52 million shares of common stock in the transaction. After closing, existing Pioneer shareholders will own approximately 76% of the combined company and existing Parsley shareholders will own approximately 24% of the combined company.

The transaction has been unanimously approved by the Boards of Directors of both Pioneer and Parsley and is expected to close in the first quarter of 2021, subject to customary closing conditions, regulatory approvals and shareholder approvals. Parsley's largest investor, Quantum Energy Partners, which owns approximately 17% of Parsley's outstanding shares, has executed a Voting and Support Agreement in connection with the transaction.

Upon closing of the transaction, Pioneer's Board of Directors will be expanded to thirteen to include Matt Gallagher, Parsley's President and CEO, and A.R. Alameddine, Parsley's lead director. Pioneer's executive management team will lead the combined company with the headquarters remaining in Dallas, Texas.

**Advisors**

In connection with this transaction, Pioneer has retained Goldman Sachs & Co. LLC and Morgan Stanley & Co. LLC as financial advisors and Gibson, Dunn & Crutcher LLP as a legal advisor. Parsley has retained Credit Suisse Securities (USA) LLC and Wells Fargo Securities, LLC as financial advisors and Vinson & Elkins LLP as a legal advisor.

**FALSE AND MISLEADING STATEMENTS
AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT**

25.     On December 4, 2020, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

26.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Company's Financial Projections**

27.     The Proxy Statement contains projections prepared by the Company's and Pioneer's management concerning the Proposed Transaction, but fails to provide material information concerning such.

28.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such

projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

29.     In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

30.     Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) EBITDAX, and (ii) EBITDA, (iii) discretionary cash flow, (iv) levered free cash flow, and (v) unlevered free cash flow.

31.     With respect to the Pioneer's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) EBITDAX, and (ii) EBITDA, (iii) discretionary cash flow, and (iv) unlevered free cash flow.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

32.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.   Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

## Material False and Misleading Statements or Material
## Misrepresentations or Omissions Regarding Credit Suisse's Financial Opinion

33.     The Proxy Statement contains the financial analyses and opinion of Credit Suisse Securities (USA) LLC ("Credit Suisse") concerning the Proposed Transaction, but fails to provide material information concerning such.

34.     With respect to Credit Suisse's *Discounted Cash Flow Analysis—Corporate* for Parsley and Pioneer, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying Credit Suisse's selection of discount rates ranging from 9.5% to 11.5% for Parsley and 9.0% to 11.0% for Pioneer; and (ii) the basis for Credit Suisse's selection of terminal multiples of 4.75x-5.75x for Parsley and 5.5x-6.5x for Pioneer.

35.     With respect to Credit Suisse's *Discounted Cash Flow Analysis—Net Asset Value* for Parsley and Pioneer, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying Credit Suisse's selection of discount rates ranging from 9.5% to 11.5% for Parsley and 9.0% to 11.0% for Pioneer; and (ii) the basis for Credit Suisse's selection of terminal multiples of 4.75x-5.75x for Parsley and 5.5x-6.5x for Pioneer.

## Material False and Misleading Statements or Material
## Misrepresentations or Omissions Regarding Wells Fargo's Financial Opinion

36.     The Proxy Statement contains the financial analyses and opinion of Wells Fargo Securities, LLC ("Wells Fargo") concerning the Proposed Transaction, but fails to provide

material information concerning such.

37.     With respect to Wells Fargo's *Discounted Cash Flow Analysis* for Parsley and Pioneer, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying Wells Fargo's selection of the discount rates ranging from 7.5% to 9.25% for Parsley and 7.25% to 8.75% for Pioneer; and (ii) the basis for Wells Fargo's selection of terminal EBITDAX multiples of 4.75x-5.75x for Parsley and 5.50x-6.50x for Pioneer.

38.     With respect to Wells Fargo's *Selected Public Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.

39.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

40.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

42.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

43.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

44.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

45.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or

omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

46.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

47.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

48.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

49.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

50.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of Parsley within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Parsley, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the

unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

55.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.      Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 14, 2020                                          Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*